[No. 7308. Decided October 14, 1908.]

W. A. FINN, *Respondent*, v. C. W. YOUNG, *Appellant.*[1]

PARTNERSHIP—SALE OF BUSINESS—REMEDIES BETWEEN PARTNERS—
FRAUD OF PARTNER—MEASURE OF DAMAGES.   Where a partnership
business was sold by one of two equal partners, who fraudulently
secured his copartner's consent to the sale and misrepresented the
price actually received, the measure of plaintiff's damages is the
difference between the sum received by plaintiff from defendant and
one-half of what the purchaser paid, even if the sum paid exceeded
the actual value; since a fiduciary relation existed between the part-
ners and plaintiff was entitled to his share of any profit made.

PARTNERSHIP—ACTIONS BETWEEN PARTNERS—FRAUD.   It is no an-
swer to an action between partners to recover damages for fraudu-
lent representations in the sale of the business that there should
be an accounting and a reinstatement in the business, when the
fraud was not discovered in time to gain relief in such an action.

Appeal from a judgment of the superior court for King
county, Griffin, J., entered December 3, 1907, upon the ver-
dict of a jury rendered in favor of the plaintiff, after a trial
on the merits, in an action in tort.   Affirmed.[2]

*Peters & Powell*, for appellant.

*W. E. Crews* and *J. R. Poland*, for respondent.

DUNBAR, J.—This action was brought by the plaintiff W.
A. Finn against the defendant C. W. Young.   The plaintiff
alleges, in substance, that he and the defendant were copart-
ners, doing business in Shakan, Alaska; that, during the time
the partnership existed, he was at Shakan attending to the
business there, and defendant was attending to the business
matters at other places; that, during the time the partner-
ship existed, he executed an optional agreement with one

[1]Reported in 97 Pac. 741.

[2]NOTE.—For decision on former appeal, see *Finn v. Young*, 46
Wash. 74, 89 Pac. 400.   REP.

Carroll, subject to the confirmation of the defendant, for the sale of the property, $20,000 for the location, and invoice price for the logs and lumber and merchandise; that Carroll took that optional agreement to Seattle, and subsequently notified him that the agreement was not confirmed by the defendant; that subsequent to that time, and without his knowledge of the facts, the defendant, with the intent and purpose of cheating and defrauding him, wrongfully and fraudulently executed an agreement with Carroll for the purchase of the property, whereby Carroll agreed to pay the sum of $35,000 for the property; that, after the defendant entered into that optional agreement with Carroll he wrongfully and fraudulently concealed the fact from him that he had entered into such an agreement, and that he wrongfully and fraudulently informed him that the agreement with Carroll for the purchase of the property was the same that had been entered into or had been first given, except that the time for the option had been extended to ninety instead of sixty days; that the defendant wrongfully concealed the fact from him that he had executed an optional agreement with the purchaser Carroll for a price largely in excess of the first optional agreement; that he went to Shakan, Alaska, and informed him that the agreement was for the same amount, and that it was his opinion that Carroll would not take up the agreement; represented to him that he had knowledge and information from Carroll that he would not take up the agreement and consummate the sale, and wrongfully concealed the amount of the second optional agreement from the plaintiff in the case. These allegations of fraud upon the part of the defendant are all denied by the answer. Upon these issues, the case went to trial, and the jury returned a verdict for the plaintiff in the sum of $7,000. There were some other allegations in the complaint in relation to other claims against defendant, but they seem to have dropped out of the case and are not pertinent issues here. Judgment was rendered for $7,000, and appeal followed.

There are three assignments of error, but they all really hinge upon the first assignment, viz., this charge or instruction to the jury:

"I charge you, gentlemen, that the measure of damages in this case, in case you find for the plaintiff, is the difference between the amount Finn received from Young and one-half of what Carroll paid for the property."

This the appellant objects to as not being the proper measure of damages, but insists that the true rule of damages is the difference between the actual value of Finn's half interest and its value under the facts as represented; and an extended argument is made on this proposition, with the citation of many authorities. It seems to us that the controversy which appellant raises is one over terms and definitions rather than the application of any legal principle, and that when the court charged the jury that "the measure of damages in this case . . . is the difference between the amount Finn received from Young and one-half of what Carroll paid for the property," he did in effect instruct them that the measure of damages was the difference between the actual value and the value under the facts represented; for the actual value was the market value as indicated by the sale to Carroll, and its value, under the facts represented, was what plaintiff received from defendant for it.

If A. and B. own a horse which is actually worth $200 in the market, and which unknown to A. has been sold by B. for $200, and B. fraudulently represents to A. that the horse is worth only $100 and fraudulently prevails upon A. to sell him the horse for $100; the result is that A. receives $50 for his share in the horse; whereas, had it not been for the fraud perpetrated upon him, he would have received $100. In other words, he loses or is damaged $50, and $50 represents the difference between the amount he received from B. and the amount that B. received for a half interest in the horse; or stated differently, it represents the difference between the actual value and the represented value.

35—50 WASH.

That is exactly the case here, for after any amount of talk and argument has been indulged in, the obvious fact remains that, if the fraud had not been perpetrated upon the respondent, instead of receiving $10,500 for his half interest in the business, he would have received one-half of the $35,000 or $17,500. His damage then by reason of the fraud was $7,000, the amount found by the jury. Even if it did not conclusively appear that $35,000 was the actual value, a fiduciary relation existed between the respondent and appellant, and the respondent was entitled to any profit that might be made by reason of the sale. The fact that appellant offered to give the respondent $500 if Carroll returned to take up the option, does not help the appellant, in our estimation. From the testimony it is easy to gather that this offer was made for the purpose of consummating the fraud by convincing the respondent that he had no hope that Carroll would "show up," as he termed it.

Some suggestion is made by appellant that there should have been an action for accounting and for a reinstating of respondent in the business. But no issue of this kind is raised in the pleadings, and it would have been impossible under the circumstances, as the fraud was not discovered in time to give relief in such a form of action. Affirmed.

HADLEY, C. J., RUDKIN, MOUNT, and ROOT, JJ., concur.