[No. 18229. Department One. January 24, 1924.]

W. G. DAVIS, *Respondent,* v. W. S. ROGERS *et al.,* *Appellants.*[1]

LIMITATION OF ACTIONS (2)—CONSTRUCTION. The statute of limitations is not an unconscionable defense, but is a statute of repose.

SAME (57)—FRAUD—DISCOVERY OF FRAUD—DILIGENCE—EVIDENCE—SUFFICIENCY. Failure to discover the fraud prior to the time for the commencement of the action will not toll the statute of limitations where the facts should have been discovered by any one exercising reasonable diligence, or were made a matter of public record.

SAME (58)—TRUST RELATION—EVIDENCE—SUFFICIENCY. The burden of clearly and convincingly showing a fiduciary relation precluding the defense of the statute of limitations is not sustained, in an action to recover the proceeds of property fraudulently retained by an agent, where the evidence tends to show that the relation had terminated, the agent was acting for himself, and there was negligence in failing to discover the fraud after repudiation of the relation.

Appeal from a judgment of the superior court for Spokane county, Webster, J., entered June 22, 1923, upon findings in favor of the plaintiff, in an action for fraud, tried to the court. Reversed.

*W. D. Scott* and *Luby & Pearson,* for appellants.

*E. B. Quackenbush* and *Fred M. Williams,* for respondent.

[1]Reported in 222 Pac. 499.

MACKINTOSH, J.—In 1905, the respondent and his wife were the principal stockholders and officers in the Davis-Comstock Company, which owned coal land in this state. About that year there was given permission to the appellants to prospect the property and an option to purchase it. In the prospecting operations the appellants expended some $6,000, and they did not exercise the option. The Davis-Comstock Company was desirous of disposing of the property and the appellants desired, if possible, to recoup their loss in connection with it. On December 12, 1911, the Davis-Comstock Company, in consideration of $4,000, conveyed to the appellants by warranty deed all of the property, sending the deed from Seattle to Spokane through banks there for delivery upon payment by the appellants of the purchase price. The appellants paid this sum to the bank at Spokane and received the deed, recorded it, and on December 28, 1911, conveyed by warranty deed to Frank Weatherwax all the property with the exception of the minerals, which were reserved, for the sum of $6,500, the consideration being expressly stated in the conveyance. This deed was recorded on January 3, 1912.

In March, 1912, the Davis-Comstock Company was voluntarily dissolved and disincorporated, and on December 16, 1914, the appellants executed a quitclaim deed to the respondent of an undivided one-half interest in all of the mineral rights upon the land. This deed recited that it conveyed an undivided one-half interest to the minerals "as reserved in that certain deed dated December 28, 1911, between W. S. Rogers and Lizzie Rogers, husband and wife, of Spokane, Washington, first parties, and Frank Weatherwax, second party, the deed being recorded in volume 37, page 449, in the auditor's office of Spokane county,

Washington." For this quitclaim deed the respondent agreed to pay to the appellants the sum of $500, and on October 6, 1917, the respondent wrote to Weatherwax stating that he was the owner of one-half of the mineral rights and understood that Weatherwax owned the surface rights, asking Weatherwax to purchase the respondent's one-half interest in the minerals for the sum of $1,000. The respondent not having paid to appellants the $500, on January 1, 1918, quitclaimed all interest in the minerals to the appellants. Later all claims against the appellants on account of the conveyance to them by the Davis-Comstock Company were assigned to the respondent, who, in 1922, began this action to recover $2,500, being the difference between the $4,000 and the amount received by the appellants from Weatherwax, the respondent claiming that the Davis-Comstock Company and he, as its assignee, had been defrauded in the transaction, that the appellant husband had acted as agent of the Davis-Comstock Company in making the sale to Weatherwax and was therefore not entitled to the $2,500 difference in price.

The fraud relied on by respondent is that Rogers represented that he could dispose of the property for $4,000 to Weatherwax and was to receive a five per cent commission of $200 for making the sale; that the deed was made from the company to Rogers and not directly to Weatherwax, for the reason that Rogers had agreed that, if Weatherwax could not pay the purchase price, he, Rogers, would pay it for him and hold the deed as security; that Rogers had no other relation to the transaction than that of agent of the Davis-Comstock Company; that Rogers, upon getting possession of the property, sold it to Weatherwax for $6,500, and in addition reserved all the mineral rights; that Rogers represented to Davis that he had received $4,000 for

the property and remitted $4,000 to the Davis-Comstock Company; that Davis was ignorant that the property was sold for $6,500 and that the mineral rights had been reserved; that, in 1921, Rogers met Davis a number of times and made no mention of the price he *had been paid* for the property by Weatherwax nor of the mineral reservation; that Davis did not know of the mineral reservation nor of what the record of the deed to Weatherwax showed; that, in November, 1921, Davis was told that Rogers had sold the land for $6,500, and this was the first intimation that he had that Rogers had obtained more than the $4,000; that, on November 10, 1921, Rogers denied to Davis that $6,500 had been obtained.

The overruling of appellants' objection to the introduction of evidence, on the ground that the complaint did not state a cause of action, and the overruling of appellants' objection to the introduction of the assignment from the Davis-Comstock Company to the respondent of its right of action, are assignments of error that need not be considered, as the case is to be determined upon the main question involved, which is, the application of the statute of limitations to the facts as we have outlined them.

There is considerable question whether there was in fact any fraud. There are many facts proved beyond dispute which tend strongly to establish the *bona fides* of the transaction between Davis-Comstock Company and the appellants. The manner of the delivery of the deed to appellants; the remission of the entire $4,000; the dealings in the half interest in the mineral rights; the respondent's testimony upon the stand that "I sold it to him;" the prayer in the complaint for $2,500 instead of $2,300; many incidents occurring in the trial, and documents introduced which contradicted the re-

spondent's bald statement that he had no knowledge of the true situation; for instance, his letter to Weatherwax, offering to sell his half interest in the minerals, clearly indicates that he was cognizant of the exact status of the affairs. But assuming that fraud was proven, the question remains whether the action has been commenced too late.

As we have said in *Arthur & Co. v. Burke*, 83 Wash. 690, 145 Pac. 974.

"The statute of limitations is not an unconscionable defense but a declaration of legislative policy to be respected by the courts" (Syllabus)

And in *United States v. Oregon Lum. Co.*, 260 U. S. 290, it was said:

".Such statutes are not only statutes of repose, but they supply the place of evidence lost or impaired by lapse of time by raising a presumption which renders proof unnecessary."

More than eleven years elapsed from the time the fraud is alleged to have been committed and the commencement of this action to recover the proceeds of such alleged fraud. Unless some other circumstance than this exists, the action would be barred. But the respondent seeks to furnish this other circumstance by the allegation that he was ignorant of the fraud until shortly before he began this suit.

The law is that the statute of limitations is tolled in actions of fraud by the failure of the defrauded party to make the discovery prior to the time of the commencement of the action. *Stearns v. Hochbrunn*, 24 Wash. 206, 64 Pac. 165; *Irwin v. Holbrook*, 26 Wash. 89, 66 Pac. 116; *Peyton v. Peyton*, 28 Wash. 278, 68 Pac. 757, and *Gay v. Havermale*, 30 Wash. 622, 71 Pac. 190.

This rule, however, is itself subject to a modification, and that is, that the defrauded party cannot be

heard to say that he has not discovered the facts showing the fraud within the limit of the statute if the facts should have been discovered prior to that time by anyone exercising a reasonable amount of diligence.

Passing for the moment the question of fiduciary relationship existing between the appellants and the respondent and the Davis-Comstock Company, it would seem that the facts which are now set forth as constituting the fraudulent acts were easily ascertainable, as they were matters of public record at any time after their completion, for the deed from the Rogers to Weatherwax was placed on record and conveyed constructive notice to all the world of its contents, which included an express statement that the consideration was $6,500. This relates to the item of fraud regarding the consideration. As to the fraud regarding the reservation of the mineral rights, the deed from Rogers to Davis in 1914 and delivered to Davis, on its face showed the mineral rights had been reserved in the deed from Rogers to Weatherwax, and expressly recites the deed of that date and the volume and page of its public record. Surely this called specifically to the respondent's attention the fact that the appellants had reserved the minerals in their conveyance to Weatherwax. *Board of Commissioners of Garfield County v. Renshaw*, 23 Okl. 56, 99 Pac. 638, 22 L. R. A. (N. S.) 207; *Ferry v. Ferry*, 9 Wash. 239, 37 Pac. 431, where we said:

"When the opportunity for discovering the fraud is presented it must be made use of promptly."

If the appellants and Davis and Davis-Comstock Company were dealing at arm's length, there could be no question but that the statute of limitations was applicable and the court would be compelled to hold, as a matter of law, that, with such statements existing in

the record, the respondent could not now be heard to say that he had first discovered the fraudulent conduct just prior to beginning this suit.

Recognizing that the law requires of one defrauded that he take cognizance of matters which are of public record, and cannot say that he failed to discover the fraud merely by failing to investigate such records, the respondent claims that he is not bound by that rule for it does not apply if a relation of trust and confidence existed between the parties, and that, where such relation does exist, the party in whom the trust and confidence have been reposed is under the duty to make a full and truthful discovery of all the material facts, and is liable for his fraudulent conduct actually discovered after the running of the statute of limitations. The respondent says: "where a fiduciary relation exists, there is an exception to the rule that public records are constructive notice of the fraud, so as to start the running of the statute of limitations against an action by the persons defrauded." He cites numerous cases to that effect, among them *Salhinger v. Salhinger,* 56 Wash. 134, 105 Pac. 236.

The question, then, is whether that fiduciary relation has been shown to have existed between the appellant Rogers and the respondent and its predecessor in interest, the Davis-Comstock Company. The relation alleged is that of principal and agent, it being the respondent's claim that the evidence establishes that Rogers was engaged as the agent of the Davis-Comstock Company in effecting a sale of the property to Weatherwax.

A close scrutiny of the testimony does not establish with the degree of certainty which is required in such cases that the relation existed. The duty is upon the one asserting the fraud to prove it clearly and convincingly. *Kleeb v. Frazer,* 15 Wash. 517, 47 Pac. 11;

*Pickle v. Lincoln County State Bank,* 61 Wash. 545, 112 Pac. 654; *Hewett v. Dole,* 69 Wash. 163, 124 Pac. 374; *Bahrs v. Runkle,* 79 Wash. 45, 139 Pac. 637; *Mueller v. Vancouver,* 81 Wash. 384, 142 Pac. 868; *Smith v. Doty,* 91 Wash. 315, 157 Pac. 881; *Petkovits v. Huessy,* 126 Wash. 38, 217 Pac. 41. The evidence is wanting in that abundance called for by the rule. The conclusion to be drawn from it is that Rogers was acting independently and for himself, as appears by the deed to him; by the reservation of the minerals for his benefit; as is witnessed by his conveyance of one-half interest thereof to the respondent for a consideration; by the remission of the entire $4,000 to the grantor instead of $3,800, which would have been the amount to be remitted if the agreement was as testified to by the respondent; by the respondent's dealing with Weatherwax in regard to a re-sale of this half interest in the mineral rights. Indeed, the evidence tending to establish the fiduciary relation was extremely meagre, and where not categorically denied there were the documents disputing it, all of which added to the burden on the respondent to establish the relation, which burden he has not carried.

It is to be remembered also that the fiduciary relation, if one existed, terminated with the transaction in 1911. The case of *Ackerson v. Elliott,* 97 Wash. 31, 165 Pac. 899, relied on to a large extent by the respondent, was one where the fiduciary relation continued between the defrauded party and the agent until long after the fraudulent transaction had been consummated. The case of *Irwin v. Holbrook, supra,* in which the statute of limitations was held to apply in an action between principal and agent, is strikingly similar to its facts to the facts of this case, and it was there held that the defrauded party was guilty of such negligence in not

discovering the fraud for more than six years after the repudiation of the trust relation that he was held to have discovered it three years before the action was begun, and therefore the statute of limitations barred his recovery. We think, under the facts of this case, the same rule that applied in the *Irwin* case should be applied here, and the evidence strongly preponderating against the findings of the trial court, the judgment is reversed and the action dismissed.

MAIN, C. J., PARKER, HOLCOMB, and BRIDGES, JJ., concur.