[No. 18993. Department Two. June 22, 1925.]

WENATCHEE DISTRICT CO-OPERATIVE ASSOCIATION, *Respondent,* v. A. J. THOMPSON *et al.,* *Appellants.*[1]

CONTINUANCE (13)—GROUNDS—ABSENCE OF WITNESS—DISCRETION. In an action tried to the court, it is not an abuse of discretion to deny a continuance, asked on the ground of the absence of witnesses from the state, where no application was made for time to take the evidence of the absent witnesses and it was admitted that they would testify as set out in affidavits on file.

APPEAL (389)—REVIEW—PLEADINGS—AMENDMENTS. The pleadings will be amended to conform to proof, admitted without objection, as to damages since the filing of the complaint, which was within the prayer for an accounting.

PLEADING (42) — ANSWER — INCONSISTENT DEFENSES — ELECTION. Under the rule that defenses are not inconsistent unless one is necessarily false and in fact contradicts the other, it is not inconsistent, in defense of an action by a fruit growers association against a member for violating a marketing contract, one clause of which permitted the member to make a bona fide sale of his orchard, for the member to plead that he made a sale which was not in fraud of the rights of the plaintiff, and that a contract largely similar to the one declared upon never became binding because of the association's failure to comply with a condition precedent.

Appeal from a judgment of the superior court for Chelan county, Truax, J., entered December 22, 1923, in favor of the plaintiff, in an action for an injunction and for damages, tried to the court. Reversed.

[1]Reported in 237 Pac. 19.

*O. P. Barrows,* for appellants.

*Hughes & Wallace* and *Chadwick, McMicken, Ramsey & Rupp,* for respondent.

MITCHELL, J.—The plaintiff is a non-profit membership corporation, under the laws of this state. It brought this action in October, 1922, against the defendants to enforce a co-operative association contract alleged to have been signed by A. J. Thompson on February 12, 1921. The contract covered apple crops of the grower Thompson for the years 1921-1925, both inclusive. The crop of 1921 was delivered and handled under the contract. The relief sought by this action was injunctive, that is, to prevent the grower from selling to a third person, and for liquidated damages on account of apples the grower had refused or failed to deliver to the association, both under the terms and provisions of the contract; and also to set aside a deed of conveyance made by Thompson to his daughters, who with their husbands are the other defendants. The deed was executed by Thompson on July 1, 1922, and recorded at his request on August 23, 1922, which it was alleged was executed in fraud of the rights of the plaintiff under the contract. The case was tried by the court without a jury, after the 1923 crop had been harvested. At the trial, by order of the court, the complaint, by a trial amendment, included the crop of 1923 in addition to that of 1922.

The answer of Thompson was general denials of essential allegations of the complaint and three affirmative defenses: First, the good faith of his conveyance to his daughters in 1922; second, failure on the part of the respondent to comply with the contract, such failure consisting of alleged mismanagement and inefficiency; and third, that the contract was never binding by reason of plaintiff's failure to obtain sufficient

signers of similar contracts, in which connection it was alleged that a written waiver signed by the defendant in the organization of the association as to the number of members originally required in order to organize the association had been obtained from him by fraud. A reply denied the allegations of these defenses.

The other defendants answered jointly. Their answer was like that of Thompson's except the affirmative defenses were not separately stated. The affirmative matter was denied. Judgment was entered for the plaintiff, granting injunctive relief; liquidated damages against Thompson covering the crops of 1922-1923; and decreeing the deed from Thompson to his daughters null and void and of no force and effect as against plaintiff's rights under its contract with Thompson. The defendants have appealed.

The motion of the respondent to dismiss the appeal for the reason that the record has not been filed in time and the court has no jurisdiction of the appeal is denied.

The errors presented and argued are: First, that the application of Thompson for a continuance of the trial was erroneously denied. A continuance was asked for as the case was called for trial, which occurred several weeks after it was set for trial. It was on the ground of the absence from the state of the defendant Thompson. There was a showing of what the witness would testify to. The application was resisted, and in the discussion which followed it appeared that affidavits of similar effect had previously been used on a motion to dissolve a restraining order issued in the case. A conference occurred among the attorneys at the suggestion of the court, after which counsel for respondent admitted that, if the absent witness was present, he would testify as set out in the present and former affidavits. The court then asked counsel for

Thompson, "Is there anything further you would like to show?" To which counsel answered, "I don't think so, Your Honor." Whereupon the court stated: "I think with that understanding I will deny the continuance. Let this be read into the record if you would like at the proper time as evidence in your behalf." Substantially the same understanding was had with reference to Mrs. Sanders, who was also absent from the state. Shortly, notwithstanding what had occurred, defendants did take an exception to the denial of a continuance. The trial was without a jury, and in such cases the court is liberal in giving time to take the testimony of a party who may be unavoidably absent, if necessary to meet any new testimony on behalf of an adversary that may be damaging. No such application was made to the court in this case. Continuances are in the discretion of the court, and in this case we find nothing to indicate an abuse of discretion.

The next assignment is that the court erred in including the 1923 crop in fixing the amount of liquidated damages. While the complaint, dated October, 1922, did not, of course, specifically mention the crop of any other year than 1922, the prayer was for an accounting with Thompson "to determine the amount of fruit from said premises delivered to other parties from the crop of 1922 and crops of any succeeding season up to the date of judgment, etc." In the trial, one of the defendants testified, without objection on the part of any of the defendants, that the 1923 crop was 12,103 boxes. Later, defendants recalled the same witness and in direct examination again testified: "Q. Mrs. Freudenberger, you testified that the 1923 crop amounted to how many boxes? A. 12,103." Upon this record, and by the established rule in this state, the pleadings will be deemed amended to conform to the judgment upon that proof, therefore the order of the

court to that effect in this case as hereinbefore stated.

The third assignment is that at the trial, by direction of the court and on motion of the respondent, the appellant Thompson was erroneously put to an election between the first affirmative defense in his answer that the conveyance of the property by him to his daughters was made in good faith, and the third affirmative defense of his answer that there never had been a contract between the parties. The motion and order were on the ground that the two defenses were inconsistent. The argument of the appellants is not against the rule that inconsistent defenses cannot be plead, but that the rule is not applicable to the defenses involved. Thompson, in his answer, denied generally the allegation of the complaint that the conveyance by him to his daughters was in fraud of the rights of the association under its contract; and then, by what is designated a first affirmative defense, he alleged that, at the time he signed the grower's contract "in a large part similar to the one set forth as plaintiff's exhibit 'A'" to the complaint, he was the owner of the orchard land; that his wife had died after he signed the contract, leaving a will conveying all her interest in the property to him; that her devise to him was in consideration of his express promise that he would sell the property after her death and divide the proceeds among the daughters; that he had listed the property for sale with real estate agents and had tried himself to sell the property, and not being able to get a purchaser, and being over eighty years of age and unable to actively care for his orchard property, he conveyed it to his daughters in obedience to his express promise to his wife. The substance of the third affirmative defense was that the association while organizing its membership expressly agreed with Thompson and other fruit growers that the grower's contract

should not be operative or binding unless on or before
March 1, 1921, a membership representing a tonnage
of 4,200 carloads of apples for the 1921 season should
be signed up, and that the association padded the ton-
nage of the membership, fraudulently concealing the
actual tonnage of only approximately 2,100 carloads,
of which fraud and imposition he did not learn until
after the 1921 crop had been handled; that the condi-
tion as to the amount of tonnage was important and
controlling because of its relation to the overhead ex-
penses of organization and operation of the associa-
tion.  It was further alleged, that while defendant had
signed a slip of paper purporting to waive the amount
of tonnage formerly contemplated, that, as a fact, such
signing was clearly a misunderstanding, for the reason
that the so-called waiver referred by number to a
paragraph of the contract that was entirely different
from that same number of a supposed duplicate of the
original contract given to him and which he had in
mind in signing the so-called waiver; and that by fail-
ing to keep and perform the condition as to the amount
of tonnage, never waived by him, the contract was
never a binding or enforcible one between the associa-
tion and himself.

It was the view of the trial court, on respondent's
motion, that these two defenses were inconsistent, con-
sidered in connection·with or in the light of § 7 of the
contract that, "this contract does not. and is not in-
tended to prevent the grower from making a bona fide
sale, or contract of sale, of his ranch without binding
his grantee to the terms of this contract."  The argu-
ment on behalf of the association is as follows:

"The concrete question is whether appellants can
say 'we entered into a contract with you, but under
section 7 we had a right to convey, and by the terms
of the contract we are discharged'; under this affirma-

tive defense, the only issue is the bona fides of the conveyance of the land; the contract stands for all purposes; and, while so doing, and at the same time say 'the paper we signed was dependent upon a condition precedent to be performed by you. You did not perform the condition; you fraudulently induced us to sign the paper you rely on (and that we rely on), and for these reasons it never became effective; you have no right of recovery because you have no contract and never had. I am a stranger to you; I am justified and not answerable.' If the one is true, the other is false; there cannot be a contract and no contract at one and the same time."

Clearly the argument is unsound. Its weakness may be seen in the assumption that the first affirmative defense states that the conveyance of the real property was made under the provisions of § 7 of the contract permitting a *bona fide* sale. We do not so understand it. On the contrary, it says that, while a contract largely similar to the one declared on was outstanding (and which the third affirmative defense states never became binding because of the failure of the association to comply with a condition precedent), a conveyance of the property was made by Thompson, not because he was permitted or not prevented from doing so by the terms of the contract, but in obedience to an express promise he made to his wife. Both of the defenses may be true. "Defenses are not inconsistent unless one of them is necessarily false." *Irwin v. Buffalo Pitts Co.*, 39 Wash. 346, 81 Pac. 849. "Defenses are inconsistent only when one in fact contradicts the other." *Irwin v. Holbrook*, 32 Wash. 349, 73 Pac. 360; *Betcher v. Kunz*, 112 Wash. 563, 192 Pac. 955.

The cases relied on by the respondent are not inconsistent with the conclusion we reach. In the case of *Hart-Parr Co. v. Keeth*, 62 Wash. 464, 114 Pac. 169,

4—135 WASH.

Ann. Cas. 1912D 243, it was held that an affirmative defense that the contract sued on had never become effective and another defense of counterclaim were inconsistent, for the reason stated in the opinion "it is not conceivable that there is any room for a counterclaim growing out of a contract which was never executed and to which the defendant was never a party." In *Pickle v. Anderson*, 62 Wash. 552, 114 Pac. 177, it was held that an action to cancel mortgages was inconsistent with another action commenced at the same time by the same party for an accounting including the proceeds of the same mortgages. Clearly they were inconsistent. The doctrine in the well considered case of *Seattle National Bank v. Carter*, 13 Wash. 281, 43 Pac. 331, 48 L. R. A. 177, is tersely expressed in the syllabus, as follows: "Where an allegation of general denial in an answer is followed in an affirmative defense by a special averment of the truth of the matter which had been denied, the defenses are so inconsistent that they cannot stand together." As we have seen, however, no such situation is presented in the present case.

We conclude that the ruling of the court requiring an election was erroneous and that the judgment must be and it is reversed. The case is remanded with directions to try out the issues raised by the allegations contained in the third affirmative defense.

TOLMAN, C. J., FULLERTON, MACKINTOSH, and HOLCOMB, JJ., concur.